Hammer v. Equifax and Experian You're listening to one of the best criminal defense lawyers in the state. Yeah. Been around a long time, hasn't he? He lives here. Really? He knows where he's from. Yeah, Mr. Samuel, we're ready for you. Yes, sir. Hello, my name is Daniel Zemel. I'm here on behalf of Mr. Scott Hammer. There are two things in this case which can't be disputed. The first, that Equifax and Experian issued credit reports concerning Mr. Hammer which were not complete. The second, it's unfair to the consumer for a credit reporting agency to arbitrarily delete information and fail to put that information back. The issue I'd like to address today is whether 15 U.S.C. 1681 E.B. requires completeness to the credit report as a whole as opposed to completeness as to discrete credit entries. Before I address the specific provisions of the FCRA, I'd like to talk about the FCRA's statutory purpose. First, the statute was enacted to ensure credit reporting, which is fair and equitable to the consumer. Second, the act is created to protect against inaccurate and arbitrary credit reports. When addressing questions under the Fair Credit Reporting Act, it's important to remember the Fair Credit Reporting Act is a consumer protection statute, and it should be liberally construed in favor of the consumer. That being said, 15 U.S.C. 1681 E.B. requires the maximum possible accuracy. As the Third Circuit noted in Cortez, there is a difference, a drastic difference, between accuracy and the maximum possible accuracy. Maximum possible accuracy necessarily contemplates completeness to the credit report as a whole. Well, it says maximum possible accuracy of the information. Does that limit, does that mean maximum possible accuracy involving information that's in the report? Or just maximum possible accuracy as a platonic ideal? Section E.B. is, the first words of it are accuracy of report, not accuracy of items within the report. And further, it goes on to discuss accuracy of the information concerning the individual, which we interpret as individual as the whole. Just so I can understand your position, is your position that there was, is your position solely that there was an item or a statement left out of the report, and not that there was something in the report that is incomplete and therefore misleading? My position is there was nothing in the report that was incomplete or misleading. No discrete credit entry. My position is the credit report as a whole was incomplete and misleading. It is also my position that the consumer file, as the credit file, which is defined in the statute, contained the information which was missing from the report. Okay. Going back to the maximum possible accuracy, it contemplates accuracy as a whole. And in this case, when Equifax and Experian issued credit reports concerning Mr. Hammer, the result was a misleading credit report because it didn't give an accurate representation as to Mr. Hammer's true creditworthiness as maintained by the credit reporting agencies. That's a key fact here. We're not saying the credit reporting agencies should seek out all the information they can about a given consumer and put that in the report. We're saying the information it had here in the file, which was significant and verified by Capital One, the creditor, should have been put into the credit report in order to comply with the maximum possible accuracy. In Karopoulos, the D.C. Circuit was the first circuit to address completeness as a component of accuracy, and that was subsequently adopted by the Third, Fourth, and Eleventh Circuits. In Sipovato, this court addressed accuracy and whether completeness was a component of accuracy. In that case, the credit report did not lead to a misleading result such that it would have an adverse effect to creditors, and for that reason, this court found there was no violation of 1681EB. In this case, the credit report issue concerning Mr. Hammer was incomplete and did lead to a misleading impression because it didn't accurately reflect his true creditworthiness. I'd like to go to the FTC report, the summary report issued to the CFPB after the transfer, and I remind the court the FTC was tasked with interpreting the statute for decades. On page 67 of the report specifically addressing Section 1681EB, there are two things I'd like to point out. First, Section 4 clearly addresses completeness as a component of accuracy. Second, on page 68, I'd like to read this for the panel. A CRA must report significant verified information it possesses about a credit account or other item of information included in the consumer's credit file. There is no question here Equifax and Experian maintained significant verified information from Capital One, but instead it arbitrarily chose to delete those items and it failed to put them back despite Mr. Hammer's request and the request of Capital One. There is another basis for my position on why the maximum possible accuracy contemplates completeness to the credit report as a whole. The Act in Section 1681I clearly reflects the reassertion of previously deleted credit data. That's what we're dealing with in this case. This information was also within the report at one time and then subsequently deleted. Considering the Act contemplates the putting back of previously deleted information, it's clear that the maximum possible accuracy of Section EB should contemplate that the completeness as a whole is what's required in order to obtain the maximum possible accuracy. My final point on Section 1681EB is as a matter of public policy. Do you maintain that this report was misleading because of the omission?  Your argument sounds very much like the same formulation on 10b-5, necessary to impose, to disclose information that is necessary to make what was disclosed not misleading. That's one way of framing matters of deceit, imposing a duty to disclose what would not. In other words, what you do say is accurate, but what you omitted makes it misleading. And that's essentially, I think, what you seem to be saying. That's correct, Your Honor. There are two standards within the federal courts. One is technical accuracy and one is inaccuracy in that it creates a misleading impression. Of course, that rule comes with the formulation by the SEC as to the intensity with which they would treat misleading products and securities issues. Where is the source of that similar obligation here? Going back to the first question, if each item that's reported is accurate, what is the necessity of reporting an initial item? The premise of this is that this entire report has a completeness to it that it plainly does not have. Basically, this is what our report is, and nothing in here is misleading, and we are in no obligation to go tell you everything about this individual. That's right. Under SEPA VATO, the standard is whether the report creates a misleading impression as to the consumer's creditworthiness such that it would adversely affect credit decisions. That's what happened here. We're not dealing with mere accuracy or technical accuracy. 16EB requires the maximum possible accuracy. How is it misleading here by that omission? Sure. Had this information been in the report, Mr. Hammer would have had both a more positive credit history in terms of credit scoring and the length of his credit history would have been greater as well. In our complaint, we discussed how, as a result of the incomplete credit report, Mr. Hammer was denied credit and he was unable to obtain a mortgage. Had these things been on his report, the basis for the denial of these things were the lack of the length of credit history, and this account would have been an eight-year credit history period. Had the report been complete, they would have been given a more accurate picture and wouldn't have denied him credit on that basis. Well, how is this report of these credit agencies presented itself as a complete picture of the individuals, economic circumstance and history, et cetera? Or this is information that we tell you, and what we tell you is accurate. In other words, it's just one source and they don't make the next up and say this is a complete picture. The information we're seeking, we're addressing here, the Capital One account, wasn't information randomly out there concerning Mr. Hammer. It was information within Mr. Hammer's credit file at Equifax and Experian. What difference does that make? I mean, the question is the obligation to file it. The obligation is when something's in the credit file which is significant and verified, deleting it in an arbitrary fashion is against the stated purpose of the act. Arbitrary, that's why they did it intentionally. I mean, what's arbitrary about it? Because you're implying that there's no – that implies there's some obligation to put it in. Calling it arbitrary doesn't create – doesn't help me. It would be unfair to allow a credit reporting agency to simply decide we're going to delete a given item concerning a given consumer and we're going to fail to put it back. Unfair because it would be misleading. You have to – it has to be something – it goes back to what is the obligation of the agency here, the credit reporting agency. And help me with the statutory text that defines that. The statutory text does not itself require that they insert all information from the credit file. I agree with that. But the FTC, which is tasked with interpreting the statute, does clearly state a CRA must report significant verified information. That's not in a rule, though, right? This is – that's correct, Your Honor. It's not in a regulation. It's in a guidance, and the status of a guidance as binding law is highly questionable. That's correct, Your Honor. It's merely persuasive authority, and when we're dealing with the maximum possible accuracy in light of the FTC's position – Well, you're looking – I mean, your second argument here was about Section 1681I, and I don't think in terms that it applies because it says – refers to the completeness or accuracy of an item of information contained in a consumer's file. But EB is about the report, is it not? That's correct, Your Honor. And he doesn't – Mr. Hammer never disputed that the information in the, quote, file about Capital One or – yes, was inaccurate, did he? The point was it was accurate, and he wanted to put it in the report. Well, Mr. Hammer's dispute was simply – And so the only obligation of the agency here is to determine whether the disputed information is inaccurate or delete the item from the file. I mean, it's just topsy-turvy. It's just not at all what Mr. Hammer was seeking to accomplish here. There can be no violation of this statute under the facts alleged. Within the dispute of Mr. Hammer, he didn't state – his position was this item should be in my report. Correct. He didn't know whether it's in the file or not. He couldn't know that. That's maintained within the Equifax and Experian system. Well, to begin with, this section only applies to the file, not the report. That's correct, Your Honor. And there was a valid dispute made concerning whether or not it was within his file or report. The Act doesn't require a consumer to delineate in their dispute whether they're disputing incompleteness to the report or to the file. Well, and then – but the only obligation of the agencies is to determine whether the disputed information, which would have been the Capital I report, is inaccurate. Are you talking under Section 1681I? I am indeed. I'm quoting it. So under Section 1681I, it's actually not clear whether accuracy is a requirement of that act given that section states that a consumer can dispute either the completeness or the accuracy of the given information in his credit file. So the fact that there is a – whether there's an inaccuracy in the report isn't a requirement under 1681I. It's our position that there is a requirement under that that accuracy relates to completeness as a whole, and we think there was, in fact, an inaccuracy here. Okay, I'll hear the – I'll listen to the other argument as well. You have time for rebuttal. Thank you. Mr. Feder? Thank you, Your Honor. I'm going to address the issues that are common to both defendants. We've reserved some time for Mr. Brumbaugh to address one issue that's Equifax-only relating to the claim about reinsertion. Would he have a claim – a valid or cognizable claim under Karopoulos? No, I think even under Karopoulos, which really has not been picked up elsewhere, he wouldn't. Karopoulos – there is no case, including Karopoulos, that has ever held that some additional account – that there's liability for incompleteness by failing to include an additional account. Karopoulos itself was an example of the misleading item of information. Something was reported as a bad debt under a code that made it unclear why it was treated as a bad debt, and the court determined that that was misleading. But there isn't any case – Karopoulos, Sepulveda – anything that has said – ever said that there's liability for not including an additional account. One thing about Sepulveda that is worth mentioning is that counsel cites it as saying that the standard for misleading is whether something is misleading as to the consumer's overall creditworthiness. Material omission or something. I just want to quote the part he's referring to at page 895 in this court's Albano opinion. The case says, a credit entry may be inaccurate within the meaning of the statute either because it's patently incorrect or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. So he's talking there about a credit entry may be inaccurate, not that an overall credit report may be inaccurate. And I mean there are lots of good reasons for that, starting with the text of the statute not requiring it, but also because if that were in fact the standard, how would anyone possibly – what standard could there be for deciding whether the overall impression created by the credit report is – it's just so subjective. You can send it to the jury, right? Yes, but – and I suspect that if you created that standard, you'd have a lot more cases to send to a lot more juries. But what – under this – first of all, for the credit reporting agencies to determine whether something has to be reported or not, they would be faced with an impossible determination because you'd have to be making this subjective assessment. But in any event, the more important point is it's not what the statute says. They're not guarantors of creditworthiness, in other words. Correct. They're – and they don't even have access to all information, right? The furnishers are not – a creditor doesn't have to report to a credit reporting agency, and so nothing – you can never expect that something is actually a complete picture and they're not representing that it is. They are basically taking reasonable steps, reasonable procedures to ensure the accuracy of what they do report. It's a sort of – the SCRA takes what you might call a sort of Hippocratic Oath approach, first do no harm. Well, what about the narrower situation presented here where Mr. Hammer complains that he went to these agencies repeatedly and said, here's Capital One. Put it in there, please. Right. So there are – well, a number of responses to that. Number one, even if you could assume that the agencies in fact knew that this was accurate information, the statute still doesn't impose – you need a statutory source for the obligation. This actually is like the 10b-5 example that Your Honor brought up. It's very similar to the argument that's often made there that there's a misleading omission, and the consistent standard is that there's no freestanding duty to disclose things. It's only if something that you are reporting is made misleading by the omission of the fact. So if you're not reporting items that are made misleading but you're not also including this other item, then there is nothing in the statute that – there's no duty of completeness in the statute. There are portions of the statute where there is a completeness reference or requirement. I wanted to ask you about that because 1681I-A1A, which we've referred to before, says if the completeness or accuracy of any item of information contained in the consumer's file is disputed, etc., etc., etc., there are certain processes that are triggered. So that's completeness or accuracy. And then I look over at 1681E-B, and it says the Consumer Reporting Agency shall follow reasonable procedures to assure maximum possible accuracy of the information. Now do you see that as a – is that a statutory clue in the text? I think this is like classic canon of statutory construction that the statute clearly separates accuracy and completeness and says completeness where completeness is required. And in EB, it's only referring to accuracy. There's no separate requirement that a consumer report be complete as to all the information. In 1681I, there is a completeness. You can challenge an item for lack of completeness, but the key is that in the language you read, it's a particular item. What does completeness mean? Well, it can mean – there are a lot of cases that address this sort of thing where, let's say, the particular account is reported, but it's only partially reported. And so someone was delinquent, and that part was reported, but they don't include the part where the delinquency was cured. And the consumer can challenge the lack of completeness of the item because the lack of completeness can make it – or another classic example. I'm forgetting the name of the case, but an agency reported that the consumer was involved in litigation with the creditor. And what they didn't say was they weren't the defendants in the litigation. They were the plaintiffs in the litigation. That's our case. That's Pinner, right? Yes, yes. In 1986. Right. So that is the sort of thing, and so there are plenty of situations, and that's like, again, like the 10b-5 example. You can be misleading about a particular item of information by being incomplete in reporting. But that's completely different from saying the overall report is not sufficiently complete. You said completeness does not speak to the report. It speaks only to the particular individual items. Is that sustainable? What? A text? In 1681i, the reinvestigation provision? Yes. And actually, it's worth looking at the FTC commentary that counsel cited. 1681e-b references maximum possible accuracy, and 1681a-1 references completeness and accuracy. Right. Well, but one refers to a file and one refers to a report. Right, right. But also, 1681i, importantly, you can't separate the phrase completeness or accuracy from the fact that it's referring to an item of information, not of a file as a whole, not of a report as a whole. And if you look at the FTC provision or commentary that counsel quoted, this is at page 68 of that commentary that he filed with the court yesterday. He read the language about reporting significant verified information, but if you look at that paragraph, again, it's clear that that is talking about with respect to a particular item in the file, particular item that's being reported. It says the header of that paragraph is completeness of item of information. And then the next sentence illustrates what it means by explaining, you know, for instance, a CRA may report delinquent accounts in consumer reports, but must accurately note later payments or other significant activity on the account. So, again, it's not leaving off an account. There's no obligation to include additional accounts. What's the status of this FTC report? I assume this responsibility was transferred to the CFPB? Yes, but in any event, I mean, none of it was binding. It's only to the extent persuasive to begin with. The FTC wasn't given authority. The commentary is not binding, but it does illustrate. I mean, it's sort of illustrating what you also see in the cases, that there's never been a case holding that this obligation exists. You know, the obligation is basically, you know, a negative commandment. You've got to make sure that what you're reporting is not inaccurate, that you're not hurting somebody by reporting inaccurate. If I'm a business and I'm relying on a credit report to make a business decision, what informs me by that report of the distinctions between completeness and so forth? The arguments that you're making are supportable plainly by the text of the statute. But if I'm a business person, what tells me that this is not a complete report? There's nothing complete about this report in the sense that it speaks to the whole of this individual that you know about. It's rather what you choose to put out there, and it's complete only as to each item. Well, I would say that, yeah, I apologize. No problem. The question is in my mind of how this is presented to business users. It's one thing if everybody's aware that these distinctions are being drawn here, but that's the question of what informs people of that. I guess sophisticated users wouldn't be aware of that. But you don't disclose that, do you? Well, I think in the—I mean, first of all, I'd hesitate to speak for all the various credit reporting agencies as to what language they use. But in the real world, I think one area that the agencies— Well, you're still in the real world here. Huh? You're still in the real world here. Well, yeah, fortunately. It may not seem like it. Well, you know, in New Orleans, that's in a good way, though. All right. In one area that the agencies have for competing with each other is that, you know, they would like customers to think that they're the most complete. They have the incentive to be as complete as they can be consistent with accuracy. I think that you also sort of have to turn it around. Again, are they doing something misleading? If you had something that said—that was representing that this is complete, that this covers the waterfront, and it really didn't, that would be misleading. But the nature of credit in the entire system is they only can get the information they can get, and they can only report what they can, you know, reasonably link to the— I'll bet you every credit report has this page-long series of disclaimers. I would think—that's what I was asking you. I'm not sure. It may also be in the contracts with their customers that, you know, what we're providing. I mean, they're not hiding the ball on this, and they're certainly not representing that, you know, that this does have everything that might be there about the consumer, and if they did, that would be a problem. Well, if they did, then somebody would have a 1681EB claim, presumably. Exactly right. It's not accurate. Yes. That's correct. If there are no further questions, I'll defer. Good morning. You're Mr. Brumbaugh? Yes, Pat Brumbaugh for Amplifax. May it please the Court, I cannot capably improve upon or add to what Mr. Federer had to say about our common issue, so I won't. I want to move to an issue that Mr. Zemel didn't get to, but because it relates to my client only, it's important to me, and that is the issue of whether the plaintiff stated a, what is called a reinsertion claim, colloquially, but the claim is that Equifax reinserted an item of information that had been deleted from the file without giving Mr. Hammer notice, and the Court dismissed that for failure to state the claim. A reinsertion claim exists. What section is that under? I'm sorry. Yeah, 15 U.S.C. 1681 I.A. 5 Big B. Okay. It's a mouthful. Yes. That claim only exists where there has been a dispute made by a consumer as to the accuracy or completeness of an item in the file. There was a reinvestigation conducted, and as a result of that reinvestigation, the item is deleted, and then later on it is reinserted. Clearly the whole point of that provision, the notice provision, is to provide a consumer protection against the possibility that the consumer is going to successfully dispute an item, and notwithstanding their good and capable work, later on have the item come back into the file without them ever hearing about it. That isn't what is alleged to have happened here, and frankly it's completely incompatible with what the plaintiff alleged. The plaintiff alleges here that his dispute was that you did not include something that you should have, not that you were including something that you shouldn't have. So it just doesn't frankly make any sense. It's not what he alleged, and the Court dismissed it. I do want to address an alternative request that he has in his briefing, and I have to give you a mea culpa on this. He says, and the alternative sent it back to let me amend the claim. I wasn't involved below, and I assumed that there was actually a motion for leave to amend, and it turns out when I was looking for it two days ago, there wasn't. So there is no request below in the District Court to actually amend the complaint. Sometimes you'll see in a response to a motion dismissed, someone will say, in the alternative, please give me leave to amend. There's no motion. There's no Rule 59 motion after the judgment was entered. So there's no error in that regard for this Court to correct. So that, I think, takes care of that issue, and I apologize for not putting that in our brief. Great. I have nothing further. Thank you. Thank you. All right. Mr. Semel, rebuttal. One of the first things I want to say is I have seen many credit reports. I have yet to see a page-long list of disclosures stating this report is not a complete or accurate representation of the consumer's creditworthiness. Were that to be the case, maybe they would be less misled, but that's not factually accurate. Well, maybe they say this is accurate to the extent of the information that is reported on the face hereof. I have not seen that language either. Okay. The language that I have seen on a consistent basis is simply the consumer's credit information. Right. Okay. I want to address the fact that 1681I says completeness or accuracy, whereas 1681EB only addresses accuracy. That was addressed directly in Karopoulos, and Karopoulos gave a number of explanations for that. First, Karopoulos pointed out that in the passing of the FCRA, the senators often used both phrases, inaccurate and incomplete, interchangeably. And Karopoulos also offered a reason for why 1681I wrote completeness and accuracy as opposed to 1681EB, and the reason given was if the result of disputing the information is to delete what was disputed, a consumer would not believe they can dispute an item that wasn't there. And for that reason, they said you can also dispute an incomplete credit report. I'd like to go to the 1681I claim because I do think our claim fits squarely within that section of the statute. And 1681A1A says if the completeness or accuracy of any item of information contained in a consumer's file is disputed, an investigation must be conducted. Here, as alleged, Mr. Hammer did make a dispute as to the completeness, and the bureaus, as alleged, did not conduct a reinvestigation. And that should be a direct violation of this statute, of this section of the statute. Is that what you alleged? That is what we alleged. I thought you just—I thought you just—not reinvestigation as such. I thought you just alleged that they just didn't do—didn't put it in the report. No, we also— They refused. I believe we also alleged a failure to conduct a reasonable investigation. Okay. Yes. Section 23 of our complaint, paragraph 23, addresses a failure to conduct a reasonable investigation, which I think we fit squarely within, especially considering this information was in the file and, accepting the pleadings as they are, the defendants failed to conduct any investigation of that. Counsel for Experian points out the phrase, item of information, and he likes to give that phrase some life, concerning only something which is actually in the credit report. What is the capital one information, if not an item of information? Item of information isn't a term of art defined in the statute to be something only included within the report as opposed to within the credit file. In fact, the FTC specifically, in the provision I read before for the court, says a CRA must report significant verified information about a credit account or other item of information. In our case, we're talking about a credit account. Clearly, that is an item of information, and that does belong in the report. Ultimately, this case comes down to what does the statute say? What is the FCRA's stated purpose? The purpose is to be fair and equitable to the consumer. Is it fair and equitable to the consumer where, in a statute that requires the maximum possible accuracy to arbitrarily remove information that the bureaus know is accurate and verified, and fail to put that information back at the consumer and creditor's request? And to your point, Your Honor, ultimately, creditors were misled in this case as it related to Mr. Hammer's creditworthiness. And that's the issue here, and it caused him significant damages. Is there something else? I guess not. Thank you very much. Thank you, Your Honor. I appreciate it. All right. Well, that concludes our case.